PS

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHAQUAN FRANKS,

       Plaintiff,                      **DECISION AND ORDER**

       v.                                     18-CV-589 EAW

SUPERINTENDANT STEWART
ECKERT; DSP BETTY "JO" GABLE;
DOCTOR JACQUELINE LEVITT; IOB
A. ACEVEDO; and IOB KATHERINE
BERGAMASCO,

       Defendants.
_____

## INTRODUCTION

Plaintiff Shaquan Franks ("Plaintiff"), who is no longer incarcerated, was formerly a state prisoner housed at the Wende Correctional Facility ("Wende"). While housed at Wende, Plaintiff filed an application to proceed *in forma pauperis* and a Complaint under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("RA"), and 42 U.S.C. § 1983. (Dkt. 1). The Court granted Plaintiff's application to proceed *in forma pauperis* and, after conducting an initial review of the Complaint, severed and transferred claims that belonged in other district courts, and terminated from this action the defendants who worked at prisons located in other districts. (Dkt. 11) (the "Initial Screening Order"). The Court granted Plaintiff leave to file an Amended Complaint regarding his Wende claims only. (*Id.*). Plaintiff's Amended Complaint (Dkt. 13) is now before the Court for initial review.

- 1 -

For the reasons that follow, Plaintiff's deliberate indifference claim against defendant Dr. Jacqueline Levitt ("Dr. Levitt") shall proceed to service. All of Plaintiff's remaining claims are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

## FACTUAL BACKGROUND

The factual background of this action is described in detail in the Court's Initial Screening Order, familiarity with which is assumed for purposes of this Decision and Order. As required at this stage of the proceedings, the Court treats Plaintiff's allegations as true.

Plaintiff suffers from the eye disease keratoconus and on October 4, 2017, while incarcerated at Eastern Correctional Facility ("Eastern"), he had a corneal transplant. (Dkt. 11 at 5). Plaintiff was transferred from Eastern to Sullivan Correctional Facility in January 2018 and then to Wende in March 2018. (*Id*. at 5-6).

After his transfer to Wende, Plaintiff asked defendants IOB K. Bergamasco ("Bergamasco") and IOB A. Acevedo ("Acevedo") for "reasonable accommodations," but these defendants informed Plaintiff, in violation of policy, that he had to get reapproval before he could have his "reasonable accommodations." (Dkt. 13 at 4). Plaintiff told Bergamasco and Acevedo that he needed accommodations "to do everyday life things like 'reading-writing, et al'" and that without accommodations he was in "a state of pain" due to light sensitivity. (*Id*.). He further informed them that the strain on his post-surgical eye could cause the corneal transplant to fail. (*Id*. at 5). Bergamasco and Acevedo nonetheless "overlooked [Plaintiff's issues] and he had to wait "almost 2 weeks" before receiving his accommodations. (*Id*.).

Even when Plaintiff received his accommodations, Bergamasco and Acevedo "refused to give [him] everything [he] was approved for," claiming that it was a security risk. (*Id.*). Plaintiff thereafter filed grievances and requests for information via the Freedom of Information Act, and discovered that neither Bergamasco nor Acevedo was qualified to be an "IOB" and that they were not "certified to deal with the blind or the legally blind." (*Id.*). Defendants DSP Betty "Jo" Gable ("Gable") and Superintendent Stewart Eckert ("Eckert") lied in their responses to Plaintiff's grievances, claiming that Bergamasco was a "low vision therapist." (*Id.* at 6). The failure to provide Plaintiff with all necessary accommodations resulted in "excruciating pain everyday" and his "transplant started failing," requiring outside hospitalization. (*Id.*).

Further, when Plaintiff was transferred to Wende, Dr. Levitt discontinued all his pain medications and removed all his medical permits, despite knowing that he was light sensitive and suffered from ongoing chest and head pains. (*Id.* at 7). Plaintiff's condition deteriorated, but Dr. Levitt refused to reissue his pain medications or his medical permits. (*Id.*). Plaintiff began to suffer from headaches so severe that he would vomit and Dr. Levitt still refused him medical treatment. (*Id.* at 8). Plaintiff filed grievances and wrote to Eckert regarding his medical treatment, but nothing was done. (*Id.*). Dr. Levitt eventually ordered an x-ray of Plaintiff's chest and a CAT scan of his brain, but two months after the x-ray was taken, she told Plaintiff that it had been lost. (*Id.* at 8-9). Dr. Levitt further refused to issue Plaintiff a medical permit for a clock. (*Id.* at 9-10). Plaintiff filed additional grievances, and Dr. Levitt retaliated against him by falsely claiming he was not taking his

prescribed eye drops and having him "placed in the hospital" in Wende "for almost a week without rec or [his] personal stuff." (*Id*. at 10).

Plaintiff wrote a number of letters to Gable, who was in charge of programs at Wende, including "assigning of . . . reasonable accommodations." (*Id*. at 12). Gable never answered any of these letters. (*Id*. at 12-13). However, Plaintiff claims that as retaliation for his repeated complaints (including filing grievances), he was "kicked . . . out of the cell-study program without reason." (*Id*.).

Plaintiff wrote to Gabel about the officers in the Special Housing Unit ("SHU") taking his "reasonable accommodation" during a "cell-frisk" and "never giving it back," but she did not respond. (*Id.* at 13.) Plaintiff subsequently spoke to Gable while she was making rounds in the SHU. (*Id*. at 14). Gable confirmed that she had received his letters but told him she did not believe "her officers" would act in the way he alleged and further stated that she thought he had sold his reasonable accommodations to another inmate. (*Id*.). Plaintiff filed another grievance and also wrote a letter to Eckert, but nothing was done. (*Id*. at 14-15). Plaintiff wrote a letter to Gable complaining that his grievances were not being properly processed, but she never replied. (*Id*. at 15).

Plaintiff has suffered "retaliation/harassment" from officers and medical staff at Wende because of the grievances he has filed. (*Id*. at 17). Eckert was aware of this retaliation but refused to intervene "as a form of punishment." (*Id*.). In particular, and among other things, Plaintiff reported an incident in which he was left handcuffed "for almost 16 hours to [the] point [his] hand started turning blue," and Eckert refused to

- 4 -

intervene. (*Id*. at 20-21). Instead, Eckert merely "rubber stamp[ed]" the denial of Plaintiff's grievances. (*Id*. at 23).

Liberally construing these allegations, Plaintiff asserts the following claims arising out of his confinement at Wende: (1) Acevedo, Bergamasco, and Dr. Levitt failed to make "reasonable accommodations" necessitated by Plaintiff's post-eye surgery status in violation of the ADA and RA; (2) Dr. Levitt retaliated against him for his grievance writing in violation of the First Amendment; (3) Dr. Levitt denied him access to adequate medical care, in deliberate indifference to his serious medical needs, in violation of the Eighth Amendment; and (4) Eckert is complicit in all of the wrong-doing of the other defendants because he knew what was happening but failed to stop it.

## DISCUSSION

### I. Standard of Review

The Court is required to screen the Amended Complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a). Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The Court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the Court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2). Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility,

however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (internal quotation marks omitted).

In evaluating the Amended Complaint, the Court must accept all factual allegations as true and must draw all inferences in Plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "Specific facts are not necessary," and a plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted)); *see also Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir. 2008) ("even after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004).

As to Plaintiff' § 1983 claims, "[t]o state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for

redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Moreover, the theory of *respondeat superior* is not available in a § 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). A supervisory official can be found to be personally involved in an alleged constitutional violation in one of several ways:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873 (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).

## II.   ADA and RA Claims

Title II of the ADA "proscribes discrimination against the disabled in access to public services." *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009) (citation omitted). The statute provides in relevant part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* (citing 42 U.S.C. § 12132). "To assure those requirements are met,

'reasonable accommodation' may have to be provided to the qualified individual." *Id.* at 73 (citation omitted). Similarly, the RA protects a "qualified individual with a disability" from being excluded from participation in, denied the benefit of, or subjected to discrimination "under any program or activity receiving Federal financial assistance," because of the individual's disability. 29 U.S.C. § 749(a). Although there are "subtle differences between the [A]cts," the purpose of both statutes is to prevent discrimination based upon disability and, as a result, courts generally apply the same legal standard for claims arising under Title II of the ADA and Title V of the RA. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

To establish a prima facie violation of either statute, a plaintiff must show "(1) that [ ]he is a qualified individual with a disability; (2) that the defendants are subject to one of the Acts; and (3) that [ ]he was denied the opportunity to participate in or benefit from defendants services, programs, or activities, or was otherwise discriminated against by defendants, by reason of [his] disability." *D.K. v. Teams*, 260 F. Supp. 3d 334, 368 (S.D.N.Y. 2017) (quoting *Powell v. Nat. Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir. 2004)). In addition to the outright denial of a reasonable accommodation, "[a] delay in providing a reasonable accommodation can violate the ADA, if that delay is caused by discriminatory animus and is sufficiently lengthy to constitute a constructive denial of a reasonable accommodation." *Wenc v. New London Bd. of Educ.*, No. 3:14-CV-0840

(VAB), 2016 WL 4410061, at *12 (D. Conn. Aug. 16, 2016), *aff'd*, 702 F. App'x 27 (2d Cir. 2017).

"Individuals in their personal capacities are not proper defendants on claims brought under the ADA or the Rehabilitation Act, although individuals can be sued in their official capacities under these statutes." *Keitt v. New York City*, 882 F. Supp. 2d 412, 456-57 (S.D.N.Y. 2011), *adopted*, 2011 WL 4526147 (S.D.N.Y. Sept. 29, 2011); *see also Garcia v. S.U.N.Y. Health Sciences Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001) ("[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials").

Plaintiff makes no allegations to establish whether he is suing Acevedo, Bergamasco, and Dr. Levitt in their personal capacities, their official capacities, or both. Nevertheless, even assuming that Plaintiff intended to sue these defendants in their official capacities and that his post-surgery vision impairment qualified him as an individual with a disability, Plaintiff fails to state a viable ADA or RA claim. Although Plaintiff has alleged he was denied some of his requested reasonable accommodations, there are no facts in the Amended Complaint to suggest that defendants refused to allow Plaintiff to participate in any program or activity *because of* his disability. *See Roberts v. City of New York,* No. 14-CV-5198, 2016 WL 4146135, at *9 (S.D.N.Y. Aug. 2, 2016) (dismissing ADA claim where "[t]he complaint fail[ed] to allege that the plaintiff was excluded from participation in any program or activity, or otherwise treated differently, because of the disability")*; Alsaifullah v. Furco,* No. 12-CV-2907, 2013 WL 3972514 at *19 (S.D.N.Y. Aug. 2, 2013) (dismissing plaintiff's ADA claim and explaining that "the Court need not

engage in an extensive analysis of the ADA requirements because the plaintiff makes absolutely no allegation that he was discriminated against, or that Defendants failed to provide him with a reasonable accommodation—i.e., railings on the walkway or an alternative to traveling through the walkway—because of his disability[.]"); *Rosado v. Herard,* No. 12-CV-8943, 2014 WL 1303513, at *6 (S.D.N.Y. Mar. 25, 2014) (dismissing ADA and RA claims where plaintiff failed to "plead[ ] facts demonstrating that he was denied access to therapeutic group sessions because of a disability").

Further, with respect to the alleged delay in providing reasonable accommodations, Plaintiff has not set forth any facts to suggest that the delay was based on discriminatory animus or that the two-week delay was "sufficiently lengthy to constitute constructive denial." *Wenc*, 2016 WL 4410061, at 12; *cf. Lewis v. Boehringer Ingelheim Pharm., Inc*., 79 F. Supp. 3d 394, 411 (D. Conn. 2015) (eight or nine month delay could constitute a failure to accommodate); *O'Toole v. Ulster County*, No. 12–CV–1228, 2014 WL 4900776 at *8 (N.D.N.Y. Sept. 30, 2014) (six month delay in providing ergonomic chair unreasonable); *Logan v. Matveevskii*, 57 F.Supp.3d 234, 271 (S.D.N.Y. 2014) ("[C]ourts have found plaintiffs' requests for reasonable accommodations to have been constructively denied after delays approximating four months." (collecting cases)).

Finally, Plaintiff's claim that he was not provided with all the accommodations he requested also fails to state a claim. "Although a public entity must make 'reasonable accommodations,' it does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice." *McElwee v. County of Orange*, 700 F.3d 635, 641 (2d Cir. 2012) (citations omitted). Here, the only specific

accommodation Plaintiff claims he was not provided is a "clock or a watch" (*see* Dkt. 13 at 6), and he has failed to state what other accommodations he was provided or to explain why, as he claims, the failure to provide a clock somehow caused him to use his eye drops only three times per day rather than four times per day. Plaintiff has not plausibly alleged that he was denied reasonable accommodations.

For these reasons, Plaintiff's ADA and RA claims are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### III.    Retaliation

Plaintiff alleges a claim for retaliation against Dr. Levitt who allegedly falsely, and in retaliation for his filing of grievances, said that he was "not taking the eye drops and had [him] placed in the hospital" at Wende for almost one week where he was without his personal items and was denied recreation. (Dkt. No. 13 at 10.)

It is well established that prison officials may not retaliate against inmates for exercising their constitutional rights. *See, e.g., Colon*, 58 F.3d at 872. To state a retaliation, claim under § 1983, "a plaintiff must show that: (1) his actions were protected by the Constitution or federal law; and (2) the defendant's conduct complained of was in response to that protected activity." *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000) (internal quotation and citation omitted). As to the second prong, Plaintiff must allege that the protected conduct was "a substantial or motivating factor in the prison officials' decision to discipline [him]." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). Evidence that can lead to an inference of improper motive includes: (1) the temporal

proximity of the filing of a grievance and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining plaintiff. *See Colon*, 58 F.3d at 872-73.

Here, applying this standard, the Court finds that Plaintiff's retaliation claim against Dr. Levitt must be dismissed. Assuming that Dr. Levitt's action of transferring Plaintiff to the hospital constituted the kind of adverse action that could sustain a retaliation claim, Plaintiff has failed to allege any facts to establish the necessary causal connection. There are no facts in the Amended Complaint from which the Court could infer that Plaintiff submitted grievances against Dr. Levitt close in time to when she sent him to the hospital. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (explaining that a plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action."). Further, there are no allegations to suggest that Dr. Levitt's behavior was motivated by anything other than the belief that Plaintiff was not properly using his eye drops—Plaintiff himself acknowledges that he struggled to take his eye drops as prescribed. (*See* Dkt. 13 at 9 (stating that Plaintiff was only taking three eye drops per day when he was meant to take four)). Plaintiff has not plausibly alleged that Dr. Levitt retaliated against him.

Further, to the extent Plaintiff may have been trying to assert a retaliation claim against Gable, it must fail also. There are no allegations in the Amended Complaint from which a reasonable factfinder could conclude that Gable took any manner of adverse action against Plaintiff. *See Davidson v. Chestnut*, 193 F.3d 144, 150 (2d Cir. 1999) (holding

that, to be actionable, retaliation against a prisoner must be likely to "chill a person of ordinary firmness from continuing to engage" in activity protected by the First Amendment). In particular, while Plaintiff claims he was kicked out of the cell-study program, he does not allege that Gable was responsible for this action. Accordingly, Plaintiff's retaliation claim must be dismissed in its entirety.

## IV.  Denial of Medical Care in Violation of the Eighth Amendment

Plaintiff alleges that Dr. Levitt discontinued his pain medication and removed his medical permit even though she knew that Plaintiff was very light sensitive and having ongoing chest and head pains. Plaintiff saw Dr. Levitt at sick call several times, but she refused to reissue his pain medicine or his medical permits. Plaintiff's head and chest pain got so bad that he became dizzy, got bad headaches, and started vomiting. He again went to sick call, but Dr. Levitt refused to treat him.

Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the Eighth Amendment's prohibition against the imposition of cruel and unusual punishment afforded by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 102, 104 (1976). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104). "First, the alleged deprivation must be, in objective terms, sufficiently serious." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted). With respect to the objective element, the plaintiff must demonstrate a violation sufficiently serious by objective terms, "in the sense that a condition of urgency, one that may produce

death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). "Second, the defendant must act with a sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

Here, reading the allegations of the Amended Complaint in the light most favorable to Plaintiff, the Court finds that his deliberate indifference claim against Dr. Levitt is sufficient to proceed to service.

## V.     Supervisory Liability

Finally, Plaintiff alleges that Eckert is liable for failing to prevent or correct the wrongdoing of the other defendants. As the Court has found that all claims other than Plaintiff's deliberate indifference claim must be dismissed, the Court limits its analysis to this claim. *See Alston v. Bendheim*, 672 F. Supp. 2d 378, 388 (S.D.N.Y. 2009) ("The failure to state a claim for an underlying constitutional violation forecloses supervisory liability.").

Plaintiff's allegations with respect to the letters he wrote Eckert are vague and conclusory. For example, Plaintiff states that after he signed up for sick call and Dr. Levitt deliberately refused to treat him, he "sent a letter" to Eckert "and once again nothing was done to put a stop" to Dr. Levitt's wrongdoing. (Dkt. No. 13 at 8.) But nowhere does he suggest what he wrote to Eckert that might have put Eckert on notice that Dr. Levitt was violating his constitutional rights. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (concluding that the defendant's receipt of a letter from a plaintiff generally complaining about the conditions of confinement was insufficient to put defendant "on actual or

constructive notice of the violation"); *Lombardo v. Freebern*, No. 16-CV-7146 (KMK), 2018 WL 1627274, at *13 (S.D.N.Y. Mar. 30, 2018) (finding that a supervisor's "presumed knowledge, without more, is . . . insufficient to establish personal involvement." (quoting *Burgess v. Wright*, No. 08-CV-725, 2009 WL 2971538, at *6 (N.D.N.Y. Sept. 11, 2009)).[1]

Further, Eckert's failure to respond to Plaintiff's letters, by itself, is insufficient to hold Eckert responsible for the constitutional violations of others, because "the fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement." *Winthrow v. Goord*, 374 F .Supp. 2d 326, 329 (W.D.N.Y. 2005 (quoting *Shell v. Brzezniak*, 365 F. Supp. 2d 362, 374 (W.D.N.Y. 2005)). *See also Johnson v. Rock*, No. 9:14-CV-815 DNH/ATB, 2014 WL 7410227, at *11 (N.D.N.Y. Dec. 31, 2014). "It is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." *Brown v. Montone*, No. 17-CV-4618 (KMK), 2018 WL 2976023, at *4 (S.D.N.Y. June 13, 2018) (quoting *Allah v. Annucci*, No. 16-CV-1841, 2017 WL 3972517, at *7 (S.D.N.Y. Sept. 7, 2017) (alterations and internal quotation marks omitted)).

For these reasons, Plaintiff's supervisory liability claim against Eckert is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

---

[1] The same analysis applies to Plaintiff's claim that Eckert failed to respond to his complaints about retaliation by other, unnamed employees at Wende.

## VI. Leave to Amend

The Court recognizes that "[a] *pro se* complaint 'should not [be] dismiss[ed] without [the Court's] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Grullon v. City of New Haven*, 720 F.3d 133, 139-40 (2d Cir. 2013) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).  However, the Court has already given Plaintiff the opportunity to amend once and, despite his comprehensive effort, he has been unable to sufficiently state a claim against any defendant other than Dr. Levitt.  The Court accordingly dismisses all of Plaintiff's claims except his deliberate indifference claim against Dr. Levitt without leave to amend.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's deliberate indifference claim against Dr. Levitt will proceed to service.  All of Plaintiff's remaining claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## **ORDER**

IT HEREBY IS ORDERED, that Plaintiff's ADA, RA, retaliation, and supervisory liability claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) with prejudice and without leave to amend; and

FURTHER, that the Clerk of Court is directed to terminate Stewart Eckert, Betty Jo Gable, A. Acevedo, and Katherine Bergamasco as defendants in this matter; and

FURTHER, that the Clerk of the Court is directed to cause the United States Marshal to serve copies of the Summons, the Amended Complaint (Dkt. 13) and this Order upon Dr. Levitt, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor; and

FURTHER, the Clerk of Court is directed to forward a copy of the Amended Complaint and this Order by email to Ted O'Brien, Assistant Attorney General in Charge, Rochester Regional Office <Ted.O'Brien@ag.ny.gov>; and

FURTHER, that, pursuant to 42 U.S.C. § 1997e(g), Dr. Levitt is directed to respond the Amended Complaint upon service.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: July 21, 2020
       Rochester, New York